IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ANDRES MATA                              §
(TDCJ No. 1297972),                      §
                                         §
              Petitioner,                §
                                         §
V.                                       §         No. 3:15-cv-199-D-BN
                                         §
LORIE DAVIS, Director                    §
Texas Department of Criminal Justice,    §
Correctional Institutions Division,[1]   §
                                         §
              Respondent.                §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Andres Mata, a Texas inmate, proceeding *pro se*, has filed an

application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court should

deny the application for the reasons explained below.

**Applicable Background**

Mata was convicted of aggravated sexual assault in 2005 and received a life

sentence. *See State v. Mata*, No. F04-01557-QI (Crim. Dist. Ct. No. 2, Dallas Cnty.,

Tex.). His conviction and sentence were affirmed on appeal. *See Mata v. State*, No. 05-

05-00504-CR, 2007 WL 882439 (Tex. App. – Dallas Mar. 26, 2007). The Texas Court

of Criminal Appeals (the "CCA") denied Mata's petition for discretionary review. *See*

---

[1] Lorie Davis has succeeded William Stephens as Director of the Texas
Department of Criminal Justice, Correctional Institutions Division, and, as his
successor, she is "automatically substituted as a party." FED. R. CIV. P. 25(d).

*Mata v. State*, PD-1016-07 (Tex. Crim. App. Jan. 16, 2008). And the United States Supreme Court denied his petition for certiorari. *See Mata v. Texas*, 555 U.S. 845 (2008).

Mata sought habeas review in the state courts. *See Ex parte Mata*, WR-81,5107-01, -02, & -03 (Tex. Crim. App.); *see also* Dkt. No. 27-1 at 33-45 (state habeas court findings of fact and conclusions of law dated March 26, 2014). And, as explained in *Mata v. Stephens*, No. 3:15-cv-199-D, 2015 WL 4557223 (N.D. Tex. July 28, 2015), the Section 2254 application now before this Court was timely filed.

The following are the facts underlying Mata's aggravated-sexual-assault conviction and sentence as summarized by the Dallas Court of Appeals:

> Courtney Ellis testified that she went out with friends and was returning home about 3:00 a.m. when she was attacked and sexually assaulted in the parking garage of her apartment complex. According to Ellis, she entered the parking garage and parked her car. As she was walking toward her apartment, appellant grabbed her around the neck, choked her, and threw her to the ground. After a struggle, appellant pulled her sweatpants down and sexually assaulted her. He then took her watch and ring and told her to stay on the ground. Appellant got into his car and drove away, again telling her to stay on the ground. When Ellis heard appellant drive down the ramp of the garage, she ran to her apartment, called her friend, and told her what had happened. Her friend's father called the police.
>
> A short time later, the police arrived at Ellis's apartment and took her to Parkland Hospital where a rape exam was performed. The doctor performing the rape exam collected vaginal specimens which were submitted to the forensic laboratory for further testing. Photographs were also taken which showed bruises and scrapes consistent with being strangled and thrown to the ground. Two or three days later, Ellis spoke with Detective Danny Muniz and gave him a description of appellant. A few months later, Ellis identified appellant in a photographic lineup. Thereafter, appellant was arrested. At that time, the police found Ellis's ring.

Evelyn Ridgley testified she performed a DNA analysis on the vaginal smear collected from Ellis. She placed the DNA from the sperm cell into a DNA database. Kimberlee Allen, a DNA analyst for the Southwestern Institute of Forensic Sciences testified that the DNA profile from the vaginal smear matched a sample in the DNA database. Allen notified the Dallas Police Department, a buccal swab was obtained from appellant, and the match was then verified.

After hearing this and other evidence, the jury convicted appellant of aggravated sexual assault.

*Mata*, 2007 WL 882439 at *1.

In his federal habeas application, Mata presents various grounds as to why his counsel at trial and on direct appeal were ineffective and why he believes the state trial court committed errors. *See, e.g.,* Dkt. No. 3 at 6-17.

### Legal Standards

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.,* *Dowthitt*, 230 F.3d at 756-57 (a finding made by the CCA on direct appeal was an

"issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby*, 359 F.3d at 713; *see also Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in

a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. ___, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court

adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a

federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))).

In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

## Analysis

<u>Indictment and Jury-Charge/Verdict-Forms Claims [Grounds 1 and 2]</u>

Through his first two grounds, Mata asserts that defects in the indictment, jury charge, and verdict forms violated his right to due process because "they relieved the State of the burden of proving that the sex between [him] and the complainant was without consent of the complainant." Dkt. No. 3 at 6-8.

Beginning with Mata's challenge just to the indictment, the state habeas court, in addressing the claim's merits, found that

> [c]ontrary to the applicant's claims, the indictment in this case did not charge three separate offenses, rather it charged alternate ways of committing this offense and an enhancement paragraph. Alternate pleading is allowed under Texas law. *Kitchens v. State*, 823 S.W.2d 256 (Tex. Crim. App. 1991). The indictment in this case is valid. This allegation is without merit.

Dkt. No. 27-1 at 35.

"The sufficiency of a state indictment is not a matter for federal habeas relief

unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction." *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994) (citing *Branch v. Estelle*, 631 F.2d 1229 (5th Cir. 1980)); *accord Alexander v. McCotter*, 775 F.2d 595, 598 (1985).

> For an indictment to be "fatally defective," no circumstances can exist under which a valid conviction could result from facts provable under the indictment. *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988).
>
> State law determines whether an indictment is sufficient to vest jurisdiction in the state trial court. *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994). Under Texas law, "indictments charging a person with committing an offense, once presented, invoke the jurisdiction of the trial court and jurisdiction is no longer contingent on whether the indictment contains defects of form or substance." *Teal v. State*, 230 S.W.3d 172, 177 (Tex. Crim. App. 2007). [Even the] "failure to allege an element of an offense in an indictment or information is a defect of substance," as opposed to one of jurisdiction. *Studer v. State*, 799 S.W.2d 263, 268 (Tex. Crim. App. 1990). As acknowledged in *Studer*, if omitting an element from an indictment is a defect of substance in an indictment, it naturally follows that the indictment is still an indictment despite the omission of that element. *Id.*

*Fields v. Thaler*, Civ. A. No. H-11-0515, 2012 WL 176440, at *6-*7 (S.D. Tex. Jan. 20, 2012).

Here, because the state habeas court found this claim to be without merit, and because the CCA denied Mata's state habeas petition without written order on that court's findings, *see Ex parte Mata*, WR-81,5107-03 (Tex. Crim. App. Mar. 25, 2015), "the highest state court has determined, at least implicitly, that the indictment is sufficient, so [Mata's] claim is thus not cognizable under § 2254," *Odham v. Scott*, 56 F.3d 1384, 1995 WL 337647, at *2 (5th Cir. 1995) (per curiam) (citing *Alexander*, 775 F.2d at 599; *McKay*, 12 F.3d at 68).

Turning to the broader due process allegations, Mata contends that the jury charge and the verdict forms made it seem that he was charged with "three separate offenses," two of which "omitted the essential element of 'without consent of the complainant.'" Dkt. No. 3 at 6-8 (therefore, "[t]he charge allowed for a non-unanimous jury verdict," because "[t]he charge did not instruct his jury that the verdict had to be unanimous with respect to each specific offense").

First, Mata was not charged with separate offenses, and the forms merely set out separate "means of commission." *Rogers v. Quarterman*, No. 4:07-cv-177-Y, 2008 WL 2061261, at *6 (N.D. Tex. May 13, 2008) ("Juror unanimity is required on the essential elements of the offense, but is generally not required on the alternate modes or means of commission. Several ways or means of committing the same offense may be alleged conjunctively, and proof of any one of these ways will suffice." (citing *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007); *Kitchens*, 823 S.W.2d at 258; TEX. CODE CRIM. PROC. ANN. art. 21.24)).

> As the state habeas trial court found as to this claim,
>
> [t]he applicant claims he is entitled to relief because the charge did not require and the verdict forms do not establish that the jury unanimously agreed as to the manner in which the offense was committed. The law allows for the conjunctive pleading of an offense and the disjunctive jury charge. *See Kitchens*, 823 S.W.2d 256. It is not required that the jury unanimously agree to the manner in which the offense occurred. *See Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006); *Young v. State*, 341 S.W.3d 417, 422-24 (Tex. Crim. App. 2011).

Dkt. No. 27-1 at 37 (citation modified).

Mata has not shown that this state-court conclusion is either contrary to, or

constitutes as unreasonable application of, clearly established federal law. Indeed, as another judge of this Court further noted in *Rogers*, "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element of the crime, even if the offense is charged in the conjunctive, and the same is true in Texas." 2008 WL 2061261, at *6 (citing *Schad v. Arizona*, 501 U.S. 624, 631-632 (1991) (plurality); *Kitchens*, 823 S.W.2d at 258)); *see also id.* ("If the state courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, the federal courts are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law." (citing *Schad*, 501 U.S. at 636-637; *Mullaney v. Wilbur*, 421 U.S. 684, 690-91 (1975))).

To the extent that Mata also challenges the exclusion of the element of consent from portions of the jury charge and verdict forms, the state habeas trial court made the following findings as to such a claim:

> The applicant next alleges jury charge error in the failure of the application paragraph to include the term "without the effective consent" of the victim. As discussed above, the indictment in this case alleged alternate ways in which this offense was committed. Again, no objection was made to the jury charge. While it is true that the first application paragraph did not include "without the effective consent of the complainant," the remainder of the paragraph allege[s] facts that, by definition, establish[ ] that the act was without consent. *See* Texas Penal Code § 22.011(b)(7). The jury charge does include a correct application paragraph that does include the phrase "without the effective consent of the complainant." The court finds that the error in the charge was harmless and did not affect the outcome of the proceeding. The jury charge required the jury find facts that by statute render the act without consent as set out in the Texas Penal Code § 22.011(b)(7). As the error did not affect the outcome of the proceeding, the court cannot find trial or

-10-

appellate counsel to be ineffective. This allegation is without merit.

Dkt. No. 27-1 at 36.

As to this claim too, Mata has not shown, and the undersigned cannot conclude, that the applicable state-court determination is either contrary to, or unreasonably applied, clearly established federal law or unreasonably determined the facts in light of the evidence at Mata's trial. *See Mitchell v. Esparza*, 540 U.S. 12, 18 (2003) ("A constitutional error is harmless when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We may not grant respondent's habeas petition, however, if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is appropriate only if the [CCA] applied harmless-error review in an objectively unreasonable manner." (citations and internal quotation marks omitted)); *Walton v. Banks*, 557 F. App'x 254, 257 (5th Cir. 2014) (per curiam) ("[I]n terms of the AEDPA standard of review," the issue "is not whether the state courts' determination of harmlessness was incorrect, but whether the harmlessness decision itself was unreasonable." (citing *Fry v. Piller*, 551 U.S. 112, 119 (2007) (in turn citing *Mitchell v. Esparza*))); *accord Westbrook v. Thaler*, 585 F.3d 245, 255-56 (5th Cir. 2009).

The Court should therefore deny Mata's first and second grounds for relief.

<u>Ineffective-Assistance-of-Counsel ("IAC") Claims [Grounds 3, 4, 5, 6, 7, 8, 11, 14, and 15]</u>

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*,

466 U.S. 668 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("the proper standard for evaluating [a] claim that appellate counsel was ineffective ... is that enunciated in *Strickland*" (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986))).

Under *Strickland*, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See* 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a

reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington v. Richter*, 562 U.S. 86, 110 (2011). "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard

of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, 578 U.S. \_\_\_\_, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 134 S. Ct. at 17, 13)).

It appears that Mata has alleged nine separate IAC claims – six concerning his trial counsel and three concerning his appellate counsel. The undersigned's careful review of Mata's state and federal habeas petitions against the detailed findings of the state habeas court has revealed that most of Mata's federal IAC claims were presented to, and addressed by, the state courts.

But, to the extent that IAC claims presented in the federal petition include "specific factual allegations" not raised in the state petition, such that "'the substance of [any] habeas claim'" made in this litigation was not "'fairly presented to the highest state court' so that a state court has had a 'fair opportunity to apply controlling legal principles to [those] facts,'" such IAC claims are unexhausted. *Campbell v. Dretke*, 117 F. App'x 946, 957-58 (5th Cir. 2004) (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004)); *see also* 28 U.S.C. § 2254(b)(1)(A).

Such IAC claims are also procedurally barred, because Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5; *cf. Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.").

Texas's statute precluding successive habeas claims except in narrow circumstances, *see* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5, is a codification of the judicially created Texas abuse-of-the-writ doctrine, *see Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally

barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001). An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Because Mata has not shown that any unexhausted IAC claims would be allowed in a subsequent habeas proceeding in state court under Texas law, such claims are procedurally barred.

Further, Mata has failed to assert the "fundamental miscarriage of justice" exception to procedural bar or demonstrate that any unexhausted ineffective-assistance-of-trial-counsel ("IATC") claim meets the very limited exception to procedural bar created in *Martinez v. Ryan*, 566 U.S. ____, 132 S. Ct. 1309 (2012) – found applicable to Texas cases in *Trevino v. Thaler*, 569 U.S. ____, 133 S. Ct. 1911 (2013) – by demonstrating that such underlying claims are "substantial.... [T]hat is, that [they have] 'some merit.'" *Crutsinger v. Stephens*, 576 F. App'x 422, 430 (5th Cir. 2014) (per curiam) (quoting *Martinez*, 132 S. Ct. at 1318); *see id.* (noting that, "if a petitioner's [IAC] claim is not substantial enough to earn a [certificate of

appealability], it is also not substantial enough to form the basis for excusing the procedural default" (citing *Martinez*, 132 S. Ct. at 1318-19 (in turn citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)))); *see also Speer v. Stephens*, 781 F.3d 784, 785 & n.4 (5th Cir. 2015) (noting the "limited nature" and "narrowness" of the exception); *cf. Reed v. Stephens*, 739 F.3d 753, 778 n.16 (5th Cir. 2014) (declining to consider claims of ineffective assistance of appellate counsel "under *Martinez*" (collected cases omitted)).

Turning to the substance of the ineffective-assistance claims Mata aims at his trial counsel and which were adjudicated by the state courts, Mata contends that he received constitutionally-ineffective assistance because (1) counsel failed to object to the indictment, the jury charge, and the verdict; (2) Mata was denied his right to testify on his own behalf; (3) trial counsel failed to subpoena a witness; (4) counsel failed to obtain a jury instruction on eyewitness testimony that Mata contends was illegally obtained; (5) counsel called Mata's fiancee to testify; and (6) counsel "failed to present a complete defense." Dkt. No. 3. The state habeas court thoroughly analyzed his IATC claims and concluded either that the claims were not credible or that but for the alleged error the outcome of Mata's trial would have been no different.

For example, as to the failure-to-testify claim, the state habeas trial court made the following findings, which also reflect the weight of the evidence against Mata at trial:

> The prosecution report indicated that the DNA collected from the victim matched that of the applicant's in a database of known sexual offenders. At no time was it emphasized to the jury that the database included convicted sex offenders. The applicant testified on the record, out of the presence of the jury that he was aware of the fact that his two prior

convictions would be used for impeachment evidence if he testified. His attorney also explained that up to this point the jury was not aware that he was a registered sex offender. Had he testified this would have been disclosed to the jury. For the applicant to assert that had he known the jury was aware of his prior sex offenses he would have testified is simply not credible.

No attorney [ ] would have encouraged the applicant to testify in this case. The victim in this case spent the evening with a college friend and her family. The victim worked for her friend's father. After dinner the group went to the friend's home and the victim returned to her apartment at about 3:30 am when she was sexually assaulted in the garage of her apartment complex. At no time was she alone from the 7 pm dinner until the 3:30 am assault with the exception of about 10 minutes when the car she was following from Forney to Dallas exited the highway prior to her arrival at her apartment. When she exited her car she saw the applicant who wrestled her to the ground and strangled her when she began screaming. He sexually assaulted the victim, took her ring and her watch then threatened the victim and drove away. The bruised and battered pictures of the victim were presented at trial. About 6 months after the assault the DNA evidence collected in the rape kit was found to match that of the applicant. After executing a search warrant of the applicant's house, the victim's ring and watch were found. The victim identified the applicant in a lineup and at trial as the person who committed the offense. A witness from the victim's apartment complex identified that applicant as the person she saw in the apartment complex garage less than two hours before the offense.

In light of these facts, for the applicant to assert that he would have testified that he met the victim in a bar earlier that evening and had consensual sex in her car is simply ridiculous. To claim the jury would have found him not guilty if he had testified is simply not credible. The victim was with numerous people all evening. She was never in a bar [on] Lower Greenville. Had the jury heard this evidence and the fact that the applicant was convicted of indecency with a child, the court is convinced the jury would have found the applicant guilty in record time. No lawyer would advise anyone in the applicant's situation to testify. The record in this case does not support the allegation of ineffective assistance of counsel in this case. The verdict would have been the same had the applicant offered his testimony. This allegation is without merit.

Dkt. No. 27-1 at 40-41.

Considering these findings, having reviewed the remainder of the state-court findings as to the other IATC grounds, and in light of the overwhelming evidence against him at his trial, Mata has not shown that any one of "state habeas court's conclusion[s]" as to the IATC "amounted to an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)); *see also Healan v. Lopez*, 503 F. App'x 497, 2012 WL 6759996, at *1 (9th Cir. Dec. 19, 2012) ("Given the overwhelming evidence of Healan's guilt, he has not shown that he was prejudiced by any error he now assigns to his counsel." (citing *Strickland*, 466 U.S. at 694)); *cf. Norris v. Davis*, 826 F.3d 821, 835 (5th Cir. 2016) ("Upon our review of the briefs and record, we conclude that Norris is not entitled to a COA on any of his ineffective-assistance claims because reasonable jurists would not debate the district court's determinations that Norris failed to established error under § 2254(d)'s standard for habeas relief and that, regardless, Norris cannot show *Strickland* prejudice in light of the overwhelming evidence of his guilt.").

Nor has Mata shown that the state-court findings and conclusions as to his claims of ineffective assistance of appellate counsel are unreasonable. *See* Dkt. No. 27-1 at 44 (Mata "claims that appellate counsel was ineffective for all the reasons previously stated in this lengthy writ. As this court has rejected all the allegations in this writ, appellate counsel cannot be held ineffective for failing to raise meritless issues on appeal."); *compare id.*, *with United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise [on

direct appeal] a legally meritless claim.").

The Court should therefore deny Mata's third, fourth, fifth, sixth, seventh, eighth, eleventh, fourteenth, and fifteenth grounds for relief.

Alleged Trial Court Errors [Ground 9, 10, 12, and 13]

In his ninth ground for relief, Mata raises several claims of trial court error – that the trial court erred by failing to admit evidence that the victim had a pending civil action against Mata and the apartment complex; that the trial court erred by refusing to permit, as hearsay, police-officer testimony concerning what a witness said about Mata's hair and how the witness aided in the investigation; that the trial court erred in admitting certain evidence; and that the trial court erred by allowing the State to argue during closing that the victim did not have a financial incentive in Mata's prosecution – all of which the Dallas Court of Appeals addressed on direct review. To the extent the Dallas Court of Appeals found trial court error as to these claims, that court found such errors to be harmless. *See Mata*, 2007 WL 882439, at *1-*8.

Similarly, Mata's tenth, twelfth, and thirteenth grounds, alleging trial-court errors related to a reporter's record, were also addressed on direct appeal. As explained by the Dallas Court of Appeals, Mata alleged on appeal that

> the State's argument that Ellis "was brave enough to take the stand and talk about how she was sexually assaulted, beat up during the assault, and feared imminent death. Unlike [appellant] who was not man enough to get on that stand and defend himself" was not included in the reporter's record. Prior to submission of th[e] case, appellant complained the reporter's record was missing this portion of the State's argument and requested a hearing to determine the accuracy of the reporter's record. [The appeal was] abated, [and the Dallas Court of Appeals] ordered the trial court to conduct such a hearing.

At the hearing, the court reporter testified she had reviewed her electronic stenographic notes and the backup audiotapes and she did not find the missing portion of the argument. Appellant, appellant's wife, and appellant's mother, all testified that the State had made the argument and trial counsel had failed to object. Both prosecutors in the case denied making the argument. Thereafter, the trial court determined that no portion of the State's argument had been omitted, and the existing record accurately reflects the proceedings. The trial court also denied appellant's motion requesting appointment of an expert witness to examine the back-up tapes.

*Mata*, 2007 WL 882439, at *9.

As to this ground, the Dallas Court of Appeals determined that

although appellant, appellant's wife, and appellant's mother testified the prosecutor made the argument, the trial court as fact finder was free to determine their testimony was not credible. Because there is evidence supporting the trial court's fact findings that the reporter's record is accurate, we cannot conclude the record shows an abuse of discretion.

*Id.*

Mata further argued that

the trial court erred by failing to appoint an expert to examine the court reporter's backup audiotape. Again, we disagree.... Here, the trial court conducted a hearing and heard testimony from the court reporter and the prosecutors' supporting a determination that the reporter's record is accurate. At the hearing, appellant questioned the court reporter about her custody of the back-up tape and her ability to determine if the tape had been altered or the recorder had malfunctioned. Appellant, his mother, and his sister testified that the reporter's record was not accurate because it omitted the alleged argument. Thus, the record reflects appellant was allowed to present testimony that the reporter's record was inaccurate. After reviewing the record, we cannot conclude the trial court abused its discretion by determining an expert was not necessary to present or explain this claim.

*Id.* at *10.

To the extent that Mata contends that trial court errors amounted to violations

of his constitutional right to due process, habeas relief is available, but "the Supreme Court [has] held that a federal habeas court may not grant relief on trial errors unless the petitioner demonstrates that the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). "[U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." *Id*. Mata has not carried his burden to show that any error by the trial court had a substantial and injurious effect or influence as to the jury's verdict.

Moreover, as is the case here, "when a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." *Fry*, 551 U.S. at 119 (discussing holding in *Mitchell v. Esparza*; emphasis in original). And, here, in light of the overwhelming evidence of guilt, in particular the DNA evidence and Mata's possession of the victim's ring, the Court should not find that the Dallas Court of Appeals's harmlessness determinations were unreasonable. *See id.*; *Harrington*, 562 U.S. at 98, 102; *Batchelor*, 682 F.3d at 405.

The Court should therefore deny the ninth, tenth, twelfth, and thirteenth grounds for relief.

## Recommendation

The Court should deny the application for writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 2, 2016

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE